Steven J. Nataupsky (CA SBN 155913)
steven.nataupsky@knobbe.com
Lynda J. Zadra-Symes (CA SBN 156511)
lynda.zadrasymes@knobbe.com
Paul A. Stewart (CA SBN 153467)
paul.stewart@knobbe.com
Jacob R. Rosenbaum (CA SBN 313190)
jacob.rosenbaum@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
MONSTER ENERGY COMPANY

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>JOF ENTERPRISE INC., a Massachusetts corporation; and JAMES FINNEY, an individual,<br><br>Defendants. | Case No. 5:22-cv-01458<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, AND UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Monster Energy Company ("Monster"), hereby complains of Defendants JOF Enterprise Inc. and James Finney (collectively, "Defendants"), and alleges as follows:

## I.     <u>THE PARTIES</u>

1.     Monster is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 1 Monster Way, Corona, California 92879.

2.     Upon information and belief, Defendant JOF Enterprise Inc. ("JOF Enterprise") is a corporation organized and existing under the laws of the Commonwealth of Massachusetts, with a principal place of business at 133 Clarendon Street # 171319, Boston MA 02117.

3.     Upon information and belief, James Finney is an individual residing in Boston, Massachusetts and is the sole owner and sole officer of JOF Enterprise.

## II.     <u>JURISDICTION AND VENUE</u>

4.     This is an action for (1) trademark infringement and false designation of origin under 15 U.S.C. § 1125(a); (2) trademark infringement under 15 U.S.C. § 1114; (3) unfair competition arising under California Business & Professions Code § 17200 *et seq.*; and (4) California common law unfair competition.

5.     The Court has original subject matter jurisdiction over Monster's federal claims that relate to trademark infringement and false designation of origin under 28 U.S.C. §§ 1331 and 1338. The Court has supplemental jurisdiction over the claims in this Complaint which arise under state statutory and common law pursuant to 28 U.S.C. §§ 1338(b) and 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

6.     This Court has personal jurisdiction over Defendant JOF Enterprise

because, among other reasons, JOF Enterprise has committed acts of trademark infringement, false designation of origin, and unfair competition in this judicial district, including but not limited to using infringing marks in connection with the advertisement, marketing, promotion, sale, and offering for sale of goods to customers in this Judicial District.  These acts have occurred at least through advertising, sales, and offers for sale on JOF Enterprise's website.  Defendant JOF Enterprise's acts form a substantial part of the transactions, occurrences, events, and/or omissions giving rise to Monster's claims.

7.     This Court has personal jurisdiction over Defendant James Finney because, upon information and belief, he is personally directing and causing JOF Enterprise to advertise, market, promote, sell, and offer for sale the infringing goods to customers nationwide, including in this Judicial District.

8.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events complained of herein took place in this Judicial District.

### III.     COMMON ALLEGATIONS FOR ALL CLAIMS OF RELIEF

### A.     Monster's Trademarks

9.     Monster is a nationwide leader in the business of developing, marketing, selling, and distributing beverages, including energy drinks. Monster has achieved extensive exposure and widespread recognition of its MONSTER® brand through its extensive advertising and sale of its energy drinks and other products, its sponsorship of sports, athletes and teams, and its extensive marketing and promotion of the brand.

10.     In 2002, Monster launched its MONSTER ENERGY® drink brand, bearing its now-famous MONSTER® mark, MONSTER ENERGY® mark, 𝝡® ("Claw Icon Mark") mark, and UNLEASH THE BEAST!® mark.  Images of Monster's flagship original MONSTER ENERGY® drink, the container which

displays the MONSTER ENERGY® mark, Claw Icon Mark, and UNLEASH THE BEAST!® mark, are shown below.

  

11.    Since at least 2002, Monster has been, and still is, engaged in the development, marketing and sale of beverages bearing Monster's UNLEASH THE BEAST!® mark and other BEAST-inclusive marks in connection with its MONSTER® line of drinks.  Monster's UNLEASH THE BEAST!® mark, in addition to appearing on the original MONSTER ENERGY® drink container, has also appeared on the containers of other products in the MONSTER® line of drinks, including continually appearing on the Lo-Carb MONSTER ENERGY® drink since that product was launched in 2003.   The original MONSTER ENERGY® and Lo-Carb MONSTER ENERGY® drinks are two of the two best-selling drinks in the MONSTER® line of drinks.

12.    Since the launch of the MONSTER® line of drinks in 2002, Monster has continuously used the UNLEASH THE BEAST!® mark and/or other marks containing the term BEAST, including but not limited to, UNLEASH THE NITRO BEAST!®, REHAB THE BEAST!®, REHAB THE BEAST! WWW.MONSTERENERGY.COM®, UNLEASH THE ULTRA BEAST!®, and PUMP UP THE BEAST!® on its MONSTER® line of drinks.

1  Some representative examples of Monster's use of its BEAST marks on its

2  MONSTER® line of drinks are shown below:









13.     Monster is the owner of numerous trademark registrations for its BEAST marks, including but not limited to the following U.S. Trademark Registrations:

| MARK | REG. NO. | GOODS | DATE FILED | REG. DATE |
|------|----------|-------|------------|-----------|
| UNLEASH THE BEAST! | 2,769,364 | Cl 32 - Fruit juice drinks, soft drinks, carbonated soft drinks and soft drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs | 12/18/2002 | 9/30/2003 |
| REHAB THE BEAST! WWW.MON STERENER GY.COM | 4,292,502 | Cl 30 - Ready to drink tea, iced tea and tea based beverages; ready to drink flavored tea, iced tea and tea based beverages<br><br>Cl 32 - Non-alcoholic beverages, namely, energy drinks, sports drinks and fruit juice drinks, all the | 2/15/2012 | 2/19/2013 |

| MARK | REG. NO. | GOODS | DATE FILED | REG. DATE |
|---|---|---|---|---|
| | | foregoing enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs | | |
| REHAB THE BEAST! | 4,336,329 | Cl 30 - Ready to drink tea, iced tea and tea based beverages; ready to drink flavored tea, iced tea and tea based beverages<br><br>Cl 32 - Non-alcoholic beverages, namely, energy drinks, sports drinks and fruit juice drinks; all the foregoing enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs | 11/3/2010 | 5/14/2013 |
| UNLEASH THE ULTRA BEAST! | 4,371,544 | Cl 32 - Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks | 11/19/2012 | 7/23/2013 |
| UNLEASH THE NITRO BEAST! | 4,394,044 | Cl 32 - Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy or sports drinks | 12/14/2010 | 8/27/2013 |

| MARK | REG. NO. | GOODS | DATE FILED | REG. DATE |
|---|---|---|---|---|
| PUMP UP THE BEAST! | 4,482,659 | Cl 05 - Nutritional supplements in liquid form; vitamin fortified beverages | 5/15/2013 | 2/11/2014 |
| PUMP UP THE BEAST! | 4,482,660 | Cl 29 - Dairy-based beverages; dairy-based energy shakes | 5/15/2013 | 02/11/2014 |
| PUMP UP THE BEAST! | 4,542,107 | Cl 30 - Ready to drink coffee-based beverages; coffee-based shakes for boosting energy; chocolate-based shakes for boosting energy; ready to drink chocolate-based beverages | 5/15/2013 | 6/3/2014 |
| PUMP UP THE BEAST! | 4,546,402 | Cl 32 - Non-alcoholic beverages, namely, non-alcoholic and non-carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; non-carbonated energy or sports drinks | 5/15/2013 | 06/10/2014 |
| HYDRATE THE BEAST! | 5,402,465 | Cl 32 - Non-alcoholic beverages, namely, energy drinks, soft drinks, sports drinks, and flavored waters; drinking water, namely, water enhanced with vitamins, nutrients, proteins, and/or amino acids | 06/16/2016 | 02/13/2018 |
| UNLEASH THE NITRO BEAST! | 5,622,925 | Cl 05 - Nutritional energy supplements in liquid form; nutritional supplement beverages containing vitamins | 12/14/2010 | 12/04/2018 |

| MARK | REG. NO. | GOODS | DATE FILED | REG. DATE |
|---|---|---|---|---|
| REHAB THE BEAST! | 5,628,025 | Cl 05 - nutritional energy supplements in liquid form; nutritional supplement beverages containing vitamins | 11/03/2010 | 12/11/2018 |
| UNLEASH THE ULTRA BEAST! | 5,633,094 | Cl 05 - Nutritional energy supplements in liquid form; nutritional supplement beverages containing vitamins | 11/19/2012 | 12/18/2018 |
| UNLEASH THE SALTY BEAST! | 5,783,086 | Cl 32 - Non-alcoholic beverages, namely, energy drinks, soft drinks, sports drinks, and fruit juice drinks | 04/13/2018 | 06/18/2019 |
| UNLEASH THE BEAST! | 5,820,901 | Cl 05 - Nutritional supplements in liquid form.<br><br>Cl 20 - Furniture; chairs; gaming chair.<br><br>Cl 43 - Bar services; café services; mobile restaurant services; restaurant services; mobile café services for providing food and drink | 01/16/2019 | 07/30/2019 |

14.     Attached hereto as Exhibits A1 -A15 are true and correct copies of Monster's trademark registrations identified in Paragraph 13 of this Complaint, which are incorporated herein by reference.   Collectively, those registrations and trademarks, including all common law rights therein, are referred to as the "BEAST Marks".

15.     Pursuant to 15 U.S.C. § 1065, U.S. Trademark Registration Nos. 2,769,364; 4,394,044; 4,336,329; 4,371,544; 4,482,659; 4,482,660; 4,542,107;

and 4,546,402 identified in Paragraph 13 above are incontestable.

16.     As a result of Monster's widespread, exclusive, and continuous use of its BEAST Marks to identify the goods and services listed in the table in Paragraph 13 above, Monster owns valid and subsisting federal statutory and common law rights to the BEAST Marks.

17.     Monster has and continues to widely market and promote its BEAST Marks by displaying the marks and trade dress on billions of cans of its MONSTER line of drinks sold in the U.S.; on promotional and point of sale materials; on product samplings; on apparel and merchandise; in magazines and other industry publications; on the MONSTER ENERGY® website, the Monster Army website, and other Internet websites; on Monster's social media sites; at trade shows, concert tours and live events; and through sponsorships of athletes.

18.     The MONSTER® line of drinks has achieved substantial commercial success.  Since 2002, Monster has sold more than 42 billion cans of its MONSTER line of drinks worldwide and sales of the MONSTER® line of drinks have generated over $92 billion in estimated total retail revenues internationally.  In 2021, approximately 6.0 billion cans were sold worldwide under the MONSTER® brand, of which approximately 2.8 billion were sold in the US.  The MONSTER® brand has established itself as the best-selling energy drink brand in the United States.  The vast majority of Monster's cans bearing its MONSTER® marks also display one of Monster's BEAST Marks.

19.     The MONSTER® line of drinks are sold in over 380,000 retail outlets in the United States, including convenience stores, gas stations, grocery stores, mass merchandisers (e.g., Costco, Wal-Mart, and Target), drug stores, and many other stores.

20.     Monster has distributed millions of point-of-sale marketing items bearing its MONSTER® Marks and/or BEAST Marks.  These point-of sale marketing items include, but are not limited to, case stackers, stickers, displays

for shelves, suction cup racks and coolers.   Below are true and accurate representative pictures illustrating examples of Monster's point-of-sale materials.









21.     Monster also widely markets and promotes the BEAST Marks to consumers through clothing sales and giveaways.   Since 2002, Monster has licensed, sold and/or given away millions of items of clothing bearing its UNLEASH THE BEAST!® marks.  Examples of use of BEAST Marks on some of these products are shown below:



22.     Further, Monster allocates a large proportion of its marketing, advertising, and promotional budget to athlete endorsements and sponsoring athletic competitions and events.  Monster has sponsored professional fighting, including the Ultimate Fighting Championship ("UFC"); basketball; baseball; hockey; NASCAR; Road Racing World Championship Grand Prix ("MotoGP") events; the AMA Supercross Series (as the title sponsor for all 16 series races); and the X Games, among many other events.  At Monster-sponsored events, the BEAST Marks are prominently promoted at the venues, including on banners and on large transport, support, and hospitality tractor trailers, motor homes, and other promotional vehicles.

23.     In addition, Monster sponsors hundreds of athletes or athletic teams that compete in a wide variety of sports, including motocross, MotoGP, AMA Superbike, Supercross, World Superbike, surfing, skateboarding, wakeboarding, skiing, snowboarding, BMX, mountain biking, snowmobile racing, off-road racing, and various classes of NASCAR racing.  When Monster sponsors an athlete, both sides agree that the athlete's clothing, gear, and equipment will display the MONSTER® brand.  Many of the events in which the Monster-sponsored athletes and athletic teams compete are broadcast nationally on television, and the broadcasts display the BEAST Marks.  An example is shown below:

1
2
3
4
5
6
7
8
9
10
11



12   24.   Opposer extensively promotes its brand, including its BEAST

13   Marks through, for example, the sponsorship of gaming events such as ESL and

14   DreamHack.   In addition, Opposer frequently promotes its sponsored gamers

15   and gaming events using its UNLEASH THE BEAST!® Mark and/or hashtag

16   #unleashthebeast.   An example of Opposer's use of the BEAST Marks in

17   connection with live gaming events is shown below.

18
19
20
21
22
23
24
25
26
27
28



25.    Monster's MONSTER® marks and BEAST Marks have also received significant exposure in national publications.   For example, these marks have been featured in *Fortune*, *Newsweek*, *Beverage World*, *Beverage Spectrum*, *Forbes*, and/or *Business Week*, among other publications.

26.    Monster's BEAST Marks also receive extensive publicity and exposure through Monster's websites, including its www.monsterenergy.com website and social media sites including Monster's Facebook, Twitter, Instagram, and YouTube accounts.   As of August 2022, Monster's Facebook page has over 25.5 million "likes"; Monster's YouTube page has over 3.05 million subscribers; Monster's Twitter page has approximately 3 million followers; Monster's Instagram page has approximately 8.1 million followers; and Monster has approximately 1.6 million followers on TikTok.  The BEAST Marks are prominently displayed on these websites and/or social media sites.

27.    The BEAST Marks were also marketed and promoted while prominently displayed on the Las Vegas monorail (the "Monster Train"). In 2003, Monster engaged in a massive advertising campaign in connection with

its sponsorship of the Monster Train, which prominently featured MONSTER ENERGY® mark and the UNLEASH THE BEAST! ® mark.  The Monster Train was featured in The Wall Street Journal, Time, and USA Today in 2003, and these articles were read by an estimated 32 million people in the U.S. Television and internet reports that discussed the Las Vegas Monster Train reached another 70 million readers, and television and radio promotions were circulated to approximately 36 million people in the U.S.

28.   As a result of Monster's substantial use and promotion of its BEAST Marks, Monster has obtained strong common law rights in the BEAST Marks, which are not only inherently distinctive but have also acquired strong secondary meaning.  Customers in this Judicial District and elsewhere readily recognize the BEAST Marks as distinctive designations of the origin of Monster's drinks, beverageware, hats, clothing, bags, sporting equipment, accessories, promotional items, and numerous other products.  The BEAST Marks are intellectual property assets of enormous value as symbols of Monster and its quality, reputation, and goodwill.

**B.** **Defendants' Infringing Activities**

29.   Upon information and belief, Defendant JOF Enterprise is in the business of producing, selling, and distributing apparel.  Upon information and belief, Defendant James Finney, as the sole owner and officer of JOF Enterprise, is the moving force behind JOF Enterprise, and makes all decisions for JOF Enterprise regarding what trademarks to use on its apparel, and where to sell that apparel.

30.   On September 4, 2019, JOF Enterprise filed an intent-to-use application to register the mark BOSTON BEAST for "concentrates and powders used in the preparation of energy drinks and fruit-flavored beverages; concentrates for making fruit juices; flavored enhanced water; soft drinks, namely, sodas; spring water," in Class 32, Application Serial No. 88/604417.

31.     On October 15, 2020, Monster filed a Notice of Opposition with the United States Patent and Trademark Office ("USPTO") (Opposition No. 91265431) opposing the registration of the BOSTON BEAST mark on the grounds of likelihood of confusion with Monster's BEAST Marks.

32.     On November 2, 2021, the Trademark Trial and Appeal Board ("Board") sustained the opposition and entered judgment against JOF Enterprise on the grounds set forth in Monster's opposition.   The effect of this judgment is a finding that there is a likelihood of confusion caused by the BOSTON BEAST mark with Monster's U.S. Trademark Registration Nos. 2,769,364; 4,336,329; 4,546,402; 5,820,901; 5,402,465; 4,482,660; 5,783,086; 4,482,659; 5,622,925; 5,633,094; 5,628,025; 4,394,044; 4,542,107; and 4,371,544.

33.     JOF    Enterprise    owns    and    operate    the    website www.iambostonbeast.com    and    maintains    the    Facebook    account, www.facebook.com/iambostonbeast.   Examples of Defendants' goods as shown on Defendants' website and Facebook page are shown below:





34. Defendants' website provides customers with the option to purchase and ship Defendants' goods bearing the BOSTON BEAST mark anywhere in the U.S., including to customers in this Judicial District.

35.   On January 18, 2022, Monster sent Defendants' counsel a cease and desist letter demanding that Defendants cease the sale, marketing, advertisement, or display of any goods bearing any mark likely to cause confusion with Monster's BEAST Marks.   A true and correct copy of the January 18, 2022, correspondence is attached hereto as Exhibit B, which is hereby incorporated by reference.

36.   As shown above, JOF Enterprise is using the mark BOSTON BEAST (the "Infringing Trademark") which is confusingly similar to Monster's BEAST Marks.

37.   Without permission or consent from Monster, JOF Enterprise has sold and is offering for sale goods bearing trademarks that are confusingly similar to one or more of the BEAST Marks.

38.   Upon information and belief, Defendants were aware of Monster and Monster's rights in its BEAST Marks at least as early as October 15, 2020, when Monster initiated the Opposition proceeding.

39.   Defendants' infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Defendants' t-shirts and have deceived and are likely to deceive the relevant consuming public into mistakenly believing that Defendants' t-shirts originate from, or are associated or affiliated with, or otherwise authorized by Monster.

40.   Upon information and belief, Defendants' acts are willful and conducted with the deliberate intent to trade on the goodwill of Monster's BEAST Marks and cause confusion and deception in the marketplace.

41.   Defendants' acts are causing, and unless restrained, will continue to cause, damage and immediate irreparable harm to Monster and to its valuable reputation and goodwill with the consuming public for which Monster has no adequate remedy at law.

## IV.   FIRST CLAIM FOR RELIEF

**(Trademark Infringement and False Designation of Origin Under 15 U.S.C. § 1125(a))**

42.    Monster repeats and realleges paragraphs 1 through 41 hereof, as if fully set forth herein.

43.    As a result of the widespread use and promotion of Monster's BEAST Marks, the marks have acquired strong fame and secondary meaning to consumers and potential consumers, in that consumers and potential consumers have come to associate the BEAST Marks with Monster.

44.    Defendants' actions are likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods, and are likely to cause consumers to believe, contrary to fact, that Defendants' goods are sold, authorized, endorsed, or sponsored by Monster, or that Defendants are in some way affiliated or sponsored by Monster, when they are not.

45.    Defendants' conduct as alleged herein constitutes trademark infringement, false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

46.    Upon information and belief, Defendants had actual knowledge of Monster's prior ownership and prior use of the BEAST Marks.  Defendants' conduct as alleged herein is willful, and is intended and likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Monster.

47.    Defendants have damaged Monster in an amount to be determined at trial.

48.    Defendants have irreparably injured Monster.  Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## V.   <u>SECOND CLAIM FOR RELIEF</u>

### (Trademark Infringement Under 15 U.S.C. § 1114)

49.     Monster repeats and realleges paragraphs 1 through 48 hereof, as if fully set forth herein.

50.     Monster owns valid and enforceable federally registered trademarks for the BEAST Marks, including at least the registrations listed in Paragraph 13 above.

51.     Defendants have used in commerce, without permission from Monster, marks which are colorable imitations of and/or confusingly similar to the BEAST Marks, in connection with the advertising, marketing, promoting, and/or sale of Defendants' goods.

52.     Defendants' unauthorized use in commerce as alleged herein is likely to cause confusion or mistake, or to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods, and is likely to cause consumers to believe, contrary to fact, that Defendants' goods are sold, authorized, endorsed, or sponsored by Monster, or that Defendants are in some way affiliated with or sponsored by Monster.  Defendants' conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

53.     Upon information and belief, Defendants have committed the foregoing acts of infringement with full knowledge of Monster's prior rights in the BEAST Marks and with the willful intent to cause confusion and trade on Monster's considerable goodwill.

54.     Defendants, by their actions, have damaged Monster in an amount to be determined at trial.

55.     Defendants, by their actions, have irreparably injured Monster. Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Monster's rights,

for which Monster has no adequate remedy at law.

## VI. THIRD CLAIM FOR RELIEF

### (Unfair Competition Under California Business & Professions Code §§ 17200 *et seq.*)

56.    Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-55 of this Complaint as if set forth fully herein.  This is a claim for unfair competition under California Business & Professions Code §§ 17200, *et seq.*

57.    By virtue of the acts complained of herein, Defendants have caused a likelihood of confusion among consumers and the public and have unfairly competed in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*

58.    Defendants' acts complained of herein constitute trademark infringement and unfair competition which have injured and damaged Monster.

59.    Defendants, by their actions, have irreparably injured Monster. Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## VII. FOURTH CLAIM FOR RELIEF

### (California Common Law Unfair Competition)

60.    Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-59 of this Complaint as if set forth fully herein.

61.    This is a claim for unfair competition under the common law of the State of California.

62.    Defendants' acts complained of herein constitute unfair competition under the common law of the State of California.

63.    By virtue of the acts complained of herein, Defendants have willfully and intentionally caused a likelihood of confusion among the purchasing public in this Judicial District and elsewhere, thereby unfairly

competing with Monster in violation of the common law of the State of California.

64.     Defendants' aforementioned acts have damaged Monster in an amount to be determined at trial.

65.     Defendants have irreparably injured Monster.  Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

66.     Defendants' willful acts of unfair competition under California common law constitute fraud, oppression and malice.  Accordingly, Monster is entitled to exemplary damages pursuant to Cal. Civ. Code § 3294(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Monster prays for judgment against Defendants as follows:

A.     That the Court render a final judgment in favor of Monster and against each Defendant on all claims for relief alleged herein;

B.     That the Court render a final judgment that Defendants have violated Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) by willfully infringing the BEAST Marks by using a false designation of origin, through the marketing, sale, and promotion of Defendants' products and/or services; and Section 32 of the Lanham Act (15 U.S.C. § 1114) by willfully infringing the BEAST Marks;

C.     That Defendants, their agents, servants, employees, attorneys, successors, affiliates, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise, be forthwith preliminarily and permanently enjoined from:

a.     using the Infringing Marks in connection with the advertising, promotion, or sale of Defendants' products and/or services; using

any of the BEAST Marks in connection with Defendants' products and/or services; using any of the BEAST Marks in adveristing or promoting Defendants' products and/or services; and/or using confusingly similar variations of any of the BEAST Marks in any manner that is likely to create the impression that Defendants' products and/or services originate from Monster, are endorsed by Monster, or are connected in any way with Monster;

b.   manufacturing, distributing, providing, selling, marketing, advertising, promoting, or authorizing any third party to manufacture, distribute, provide, sell, market, advertise, or promote any unauthorized products bearing any of the BEAST Marks and/or any confusingly similar marks;

c.   otherwise infringing any of the BEAST Marks;

d.   engaging in any activity that constitutes unfair competition with Monster;

e.   falsely designating the origin of Defendants' products and/or services;

f.   making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) Defendants' products and/or services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Monster or (ii) Monster's goods and/or services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendants;

g.   using or authorizing any third party to use in connection with any business, goods, or services any false description, false representation, or false designation of origin, or any marks, names,

words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Monster or tend to do so;

h. filing any applications for registration of any trademarks, trade dress, or designs confusingly similar to the BEAST Marks; and

i. aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (h);

D. That Defendants be directed to immediately cease all manufacture, display, distribution, marketing, advertising, promotion, sale, offer for sale and/or use of any and all packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials that feature or bear any designation or mark incorporating any of the Infringing Marks, or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the BEAST Marks, and to direct all distributors, retailers, wholesalers, and other individuals and establishments wherever located in the United States that distribute, advertise, promote, sell, or offer for sale Defendants' goods and/or services to cease forthwith the display, distribution, marketing, advertising, promotion, sale, and/or offering for sale of any and all goods, services, packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials featuring or bearing any of the Infringing Marks, or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the BEAST Marks, and to immediately remove them from public access and view;

E. That Monster be awarded an amount up to three times the amount of its actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a));

F. That Defendants be directed to account to and pay over to Monster all profits realized by their wrongful acts in accordance with Section 35(a) of the

Lanham Act (15 U.S.C. § 1117(a)), enhanced as appropriate to compensate Monster for the damages caused thereby;

      G.    That the Court declare this an exceptional case pursuant to Section 35(a) of the Lanham Act and award Monster its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a));

      H.    That Monster be awarded interest, including prejudgment and post-judgment interest, on the foregoing sums;

      I.    That Defendants be directed to deliver and destroy all unauthorized material bearing any of the Infringing Marks or any of the BEAST Marks, or any confusingly similar marks, pursuant to 15 U.S.C. § 1118; and

      J.    That Monster be awarded such other and further relief as the Court deems just.

Respectfully submitted,
KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated:  March 22, 2017    By:  */s/ Jacob R. Rosenbaum*
                                      Steven J. Nataupsky
                                        Lynda J. Zadra-Symes
                                        Paul A. Stewart
                                        Jacob R. Rosenbaum

Attorneys for Plaintiff,
MONSTER ENERGY COMPANY

# I.  <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Monster Energy Company hereby demands a trial by jury on all issues so triable.

Respectfully submitted,
KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated: March 22, 2017          By: */s/ Jacob R. Rosenbaum*
                                         Steven J. Nataupsky
                                         Lynda J. Zadra-Symes
                                         Paul A. Stewart
                                         Jacob R. Rosenbaum

Attorneys for Plaintiff,
MONSTER ENERGY COMPANY

56115856